Mr. Dodge, may it please the court. Mr. Randolph's second section 2255 motion fits squarely within subsection H2. It relied upon a new rule, Johnson, that was made retroactive through Welch and was previously unavailable to Mr. Randolph. Even though he raised it previously? Yes, Your Honor. Mr. Randolph raised it previously, but the district court made that claim unavailable. And there were two reasons for that. First, the court ignored retroactivity. Whoa, whoa. You're saying that it was unavailable even though it was available to him because the district court ruled incorrectly that he wasn't entitled to it? No, Your Honor. It was not available in March of 2016 because Welch had not yet arrived. And the district court did not apply the Johnson rule retroactively and then used that, passing it through the filter of procedural reason. So the retroactivity, nothing is available until the Supreme Court has made it retroactively applicable. I would not go that far, Your Honor, but I would say it's not available here because in March of 2016, this court's binding precedent held that Johnson was not retroactive to ACCA cases on collateral review, cases like Mr. Randolph's. How do you address the fact that he raised it in his motion for reconsideration after Welch came out? That's right, Your Honor. Mr. Randolph did remind the court that Welch, and if I could make one correction, the motion for reconsideration came before Welch, but after Welch had been argued in the Supreme Court. Mr. Randolph was denied on March 29th, 2016, and within a few weeks, filed his motion for reconsideration. In his motion for reconsideration that I'm looking at right here on page 4, he says, on April 18, 2016, the United States Supreme Court ruled in Welch v. United States that the holding in Johnson should be applied retroactively. Yes, Your Honor. I've got the dates wrong. So he brought it to the court's attention in the motion for reconsideration. How is that not available to him? It wasn't available because the district court did not make it available to him. Mr. Randolph tried. So, again, your argument is that if the district court's ruling is wrong, the restrictions on second and successive applications don't apply. There is an exception, unstated exception, for erroneous decisions. I don't go that far, Your Honor. I simply say that Welch and Johnson create a narrow exception to the general rule that procedural default is permanent. In this particular... It's not procedural default. He didn't default the claim. He presented it and lost on it. And doesn't 2244D speak to that? I'm sorry, not D. 22443B. I'm sorry, 3B1, say, a claim presented in a second or prior application shall be dismissed. He presented this claim in a previous application. And doesn't the statute specifically command that it shall be dismissed? Yes, Your Honor. You've got the statute correct, of course, but subsection 2255H2 provides the rare exceptions that get Mr. Randolph out from under that general prohibition. This was a new rule that was previously unavailable, as I say, at the time that the district court rejected the first 2255 motion. Except the motion for reconsideration, as we've just discussed, he specifically raised Welch. And I think what you're arguing is that in spite of this MFR, the district court continued to say procedural default. I'm assuming we're here today because he did not appeal that first petition. That would have solved the problem. If the district court got it wrong, which is what you're arguing today, the solution would have been to appeal, not file the second and successive motion. Yes, Your Honor. That was one option that Mr. Randolph had. He didn't choose that option, and I'd like to tell you why. I'd like to know why it's not the only option. That's right. Subsection H2 provides a second alternative path for rare cases like this. Mr. Randolph's motion not only fits within the letter of H2, but the spirit of that as well. He didn't abuse the writ here. He didn't seek a second bite at the apple. He sought only a first meaningful bite through this second or successive application to this court. Mr. Randolph Only a meaningful bite had been an appeal of the denial. Well, that's right, but that's not the only path available to him. It certainly would be much cleaner, Your Honors, if Mr. Randolph had done it. So a criminal defendant who raises a claim that's wrongly rejected by the district court doesn't have to appeal? He just goes straight into 2255? No, Your Honor. Most would have to appeal or forever lose that right. This is an unusual case because of Welch, and if I could point out Welch was available to him while his time for appealing was still open. That's right, it was. The time for appeal expired on May 28, 2016. Mr. Randolph filed the second or successive application in this court two days before the expiration of what would have been the COA deadline. Mr. Randolph raised all the same issues, made all the same arguments in the SOS application that he would have made in a COA application. Mr. Randolph was pro se. Mr. Randolph told the court in his SOS application on page four of his memorandum that he didn't believe he had the right to do a direct appeal because he had lost the notice of appeal issue in the first 2255, and the district court had denied him a COA. He had lost the notice of appeal issue? Yes, sir. That was one of the two issues, the issue other than Johnson, that Mr. Randolph raised. He accused his attorney at the time of sentencing of not filing a direct appeal back in 2011-2012. But Mr. Randolph, in substance, did everything that he would have done had he labeled his application a COA application instead of an SOS application. That's the only difference, and that's why we're here today. But this is not at all a typical abuse of the writ of a defendant who keeps coming back over and over again simply regurgitating the same arguments. And we now know that it's very likely, after all this time, that Mr. Randolph is no longer worthy of an ACCA enhancement. One of his predicate offenses, the third degree tenancy burglary, has now been held by the Sixth Circuit to no longer fit within the ACCA's violent felony definition. Now, this court hasn't ruled on that particular state statute, of course, but we've got a man That decision came after. It did, Your Honor. Proceeding. So now you're arguing if there's a decision years after the first 2255, that's an exception? No, I don't ask the court for that exception either. I simply offer that to fit in with what the Supreme Court told us in Teague, which is that finality interests are at their weakest when a defendant's sentence is not authorized by law. And we have that very likely here now for Mr. Randolph. Can you say definitively that the petitioner would have, would definitively have relief even under Johnson and Welch? Because in the briefing, it was pointed out that there were other offenses that could have been used to qualify him as an armed career criminal. So, I mean, is it all moot? I mean, if that's the case. No, Your Honor. It's just an academic exercise. It's not here because Mr. Randolph has until now only three and no more ACCA predicates. There's a tenancy conviction for attempted murder and attempted robbery that counts as one conviction. There's a tenancy conviction for aggravated assault, which is number two. And then the third is this third degree burglary. So if Mr. Randolph were able to get a fresh review in the district court and the court were to strike this third degree burglary conviction, he would no longer fit. But the government points to other convictions that would qualify him as well, does it not? Well, the government doesn't make that explicit in my view, Your Honor. And the government has not said in its brief that it believes there are four prior predicates. So that if we lose the burglary and that's out, Mr. Randolph is still no better. The government hasn't made that point in its brief. And I do think the government would concede that without the burglary, Mr. Randolph would no longer fit within the ACCA. All right. Let me ask you this. Write for us the punchline rule of law you would have us adopt and make part of the law of this circuit. And we say, we realize that 2244B2 provides that a claim presented in a second or successive habeas corpus application, or 2255, that was not presented in a prior application shall be dismissed unless, A, the applicant shows the claim relies on new rule of constitutional law, et cetera, and B, and we also realize that one presented in a second or successive habeas application that was previously presented in a previous 2255 shall be dismissed, period. However, comma, we hold. When a defendant loses his first 2255 motion before the new rule is made retroactive and the district court relies simply on the generic procedural default bar, then the defendant fits within the narrow exceptions of subsection H2. So you would have us hold that the new rule of constitutional law is not available until the Supreme Court has made it retroactively applicable? Yes, in this particular issue because it was not under this court's binding precedent before Welch. It was not? Retroactive to cases on collateral review, cases like Mr. Randolph. Sure, sure. Until it is held to be retroactively applicable by the Supreme Court of the United States. Yes, Your Honor. So you would have us read into the requirement of availability a requirement of retroactive Supreme Court or binding precedent decision as well? Yes, I would ask the court to make that a condition of second or successive. Just ink in that requirement. I mean, we can just write the words into the text. It says that was previously unavailable or if available had not yet been made retroactively applicable. Well, I don't ask the court to go that far. I simply ask the court when there's a Welch or Johnson issue that was previously unavailable here in this circuit because of In re. But we've got to make a rule for all cases. We can't just say to help out Mr. Randolph and we can't just say on Johnson and Welch issues. We've got to redo and remodel this statutory text. So you would have us say previously unavailable or if available had not yet been made retroactively applicable. That would do it, would it not? No, Your Honor, because you've added the word if not previously unavailable, available, etc., etc. I simply say that a statute or, I'm sorry, a rule that was previously found to be not retroactive is not previously available. It would fit neatly into the rest of the statute. And for this purpose, we could put a defining clause in there since we're rewriting the statute. Availability or unavailability includes any claim that has not yet been made retroactively applicable. The court doesn't need to go so far here. Tell me what's short of that. How do you define, we're writing the definitions section for this provision. How do you define availability or, if you will, unavailable? Unavailability here is a binding case from this circuit saying that the issue is not retroactive and combined with the district court's generic procedural default bar against that initial claim. Okay, so the absence of a decision that is retroactively applicable and it being held barred because it hadn't previously been held retroactively applicable. That would do it, right? Not necessarily, no, Your Honor, because again, speaking of Welch, and I'm not trying to limit the court. Well, don't. Don't speak of Welch. Tell me what we write into the statute to accommodate your position. Well, I don't want the court to feel like it needs to rewrite the statute, but the rule that But we have to. Well, the rule that I'm asking the court to propose or to write is that a claim is previously unavailable and fits within H-2 if this court has previously held in binding authority that the rule is not retroactive and the district court simply applied the generic procedural default bar in due course without considering that retroactivity. Shall we read into availability and unavailability the retroactivity? Yes, Your Honor, it does play into that. Two circuits, the Seventh and the Tenth, have taken the retroactive Johnson rule and fed it into the filter of procedural default and held that it constitutes cause to excuse that default and that's exactly how it should apply here to Mr. Randolph. Okay, I think I get your position. Thank you, Your Honor. Mr. Bly. May it please the court, Christopher Bly for the United States. I need to start with a mea culpa. We had a significant citation error in our brief. Chief Judge Carnes, we cited to your concurrence in the denial of rehearing in Bonk and Ardley. What can possibly be error about that? The error in that was not noting the procedural posture of the case. You read our brief, it looks like we're citing to a panel opinion and obviously it's not that. I can understand how you would confuse the two. Our office is better than that. It shouldn't have happened. We appreciate the correction. Lawyers don't always do that, so thank you for doing that. Both to the court and to Mr. Dodge. Judge 2255 H2 says that the rule has to be a new rule of constitutional law made retroactively applicable that wasn't previously unavailable and or that was previously unavailable. And we know it wasn't because in his first 2255, he cited desk camps while that. But you need to meet the point of his argument, which is available means that you could get it vindicated and that under existing law, it wasn't, quote, barred, end of quote, by precedent of the 11th Circuit saying it wasn't retroactively applicable. That's his position. Two points to that. First of all, nobody argued that it was not retroactively applicable. The government did not argue that. Judge Murphy certainly did not rule that in his order. And I think the other point to make here is there is a difference between retroactivity for purposes of a first 2255 and purposes of a second 2255. Mr. Randolph didn't need Welch. He was at that point in his first 2255 and he didn't need the Supreme Court to have made it retroactively applicable under 2255-H2. All he's got to do is fit in the generic Teague standards. And we talk a lot about In re Rivero in this case, which where the 11th Circuit had held that Johnson was not retroactively applicable for purposes of a second or successive. But in that very case, in responding to the dissent's argument, the court made the point that if, and I'll quote it, if Rivero, like the petitioner in Bosley, was seeking a first collateral review of his sentence, the new substantive rule from Johnson would apply retroactively. And of course, that's this court's opinion in Mayes that held that for the purposes of a first 2255, both Deskamps and Johnson are retroactively applicable. That's why the government didn't argue a retroactivity or didn't make a retroactivity argument in Mr. Randolph's first 2255. So you're familiar with this case, United States versus Snyder? Or are you? I'm sorry, Judge, United States versus Snyder? Yeah, S-N-Y-D-E-R from the 10th Circuit, where it talked about . . . The one in the 28-J letter about the . . . Are you talking about the procedural default case, Judge? Well, exactly. Yeah. So is this situation different than the situation in Snyder? The court found that this new application of constitutional law did excuse the procedural default. Or am I reading it wrong? No, I think you're reading Snyder right. And so you're asking, are you asking, Judge, essentially, did the district court get it right in the first 2255? What I'm trying to find out is, is this case, first of all, on point to the facts in this case, Snyder on point to the facts of this case, and how is it distinguishable, if at all? Well, Judge, I think it's distinguishable because the procedural default and the propriety of whether Judge Murphy got the procedural default right in the first 2255 is no longer before the court for a number of reasons. One, because the defendant, Mr. Randolph, did not appeal from that. And two, because it's outside the COA. So the time for deciding whether the procedural default opinion that Judge Murphy issued in the first 2255, whether that is correct, has come and gone. Does that answer your honest question? Somewhat. So this procedural default held by the court, was that even really briefed by the parties? No. We did, the government did not argue procedural default. The defendant did not argue procedural default. The court went there on its own. So the court never really got to the merits of Johnson? I think we could debate whether a procedural default ruling is a ruling on the merits. We argue in our brief that it is, but the more technical, that's probably the technical answer to your question. The more practical answer to your question is no. Judge Murphy did not look at it and analyze whether Tennessee third degree burglary remained an ACCA predicate following Deaths Camps and Johnson. Anything else? Judge, I think that's our argument. Thank you for the time. You yield, Mr. Dodge, five minutes. The government reminds us of Mays. This circuit issued a decision in Mays on March 29th, 2016, the very day that the district court denied Mr. Randolph's first 2255 motion. And in Mays, a panel of this court said that Welch, I'm sorry, that Johnson is applicable to first 2255 motions. So it should have been applicable to Mr. Randolph if he had not been a defendant. At that moment. Now, he filed a motion for reconsideration, as we talked about earlier, and the district court. Why wouldn't it have been applicable to first 2255 motions? Well, it should have been. I'm sorry. What is the point you're making? I didn't understand the government to argue that Johnson didn't apply to first 2255 motions. Yes, Your Honor. The point I'm making is that in late March and then into April of 2016, the district court continued to entirely ignore the retroactivity of Mr. Randolph's Johnson claim, even though Mays had just arrived during that same time period. So the district court erroneously ruled. I thought if anything was clear, it was that there was no exception in the second successive application regime for erroneous rulings of the district court. Otherwise, the restrictions on the second successive applications or motions would have no effect and would be utterly useless. Because if they only applied if the claim didn't have merit and the district court correctly decided it, what is the point? So let's take it as a given that the district court got it wrong. That doesn't, you wouldn't have us right into those restrictions, but none of them apply if the district court decision is erroneous. No, I would not. But this point that I'm making feeds into the larger point that the claim was not truly available in March and April of 2016. Because the district court got it wrong. Because the district court did not treat the issue, the claim as retroactive. Which is what was wrong with the decision. Yes, it is. It's not sufficient alone for us to get. So the only errors that lift the second and successive application bars entirely are those where the district court in the first petition got the Teague retroactivity doctrine wrong.  We have here a combination with, on the day that the district court dropped the first order on the first motion, Mr. Randolph's claim was not yet made retroactive by this circuit or the Supreme Court. So the combination of these circumstances together in this rare case. Which was error. Should have been. Yes. Okay. So when there's an error. When there's an error. Second and successive restrictions don't apply. When there's an error on retroactivity. I don't ask the court to say that. I say it's a circumstance to be considered with other circumstances in deciding whether or not this particular claim was, in fact, available. So you would give us unfettered discretion to rule on that? The court always has unfettered discretion to rule. From your lips, I don't think so. I understand. And the last point I'd like to make, Your Honors, is that Mr. Randolph is the only person in the district court who did raise retroactivity. He tried at every turn to argue that Johnson was retroactive. The government didn't write back on that issue. The district court and the magistrate court also chose to ignore it. And then Mr. Randolph, within the time frame to file his COA application, raised that issue here and presented it to this court and simply put the wrong label on it. He called it an SOS application and used the court's general form. If he'd called it a COA application, he would have been fine. Unless the court has more questions, I'll conclude. We don't. Thank you. Thank you. We appreciate the argument. We'll take that case under submission and stand in recess until tomorrow morning. Thank you.